Matter of JOHN VIVIANE & SON, Inc., Bankrupt.

Lewis H. SAPER and I. Arnold Ross, Petitioners,

v.

JOHN VIVIANE & SON, Inc., John Viviani, Barbara Viviani and James R. Curreri, jointly and severally, Respondents.

No. 64798.

United States District Court
S. D. New York.
March 25, 1957.

I. Arnold Ross, New York City, for petitioners.

James R. Curreri, New York City, for respondents John Viviane & Son, Inc., John Viviani and Barbara Viviani.

James R. Curreri, New York City, pro se.

**FREDERICK VAN PELT BRYAN, District Judge.**

The petitioners are the Trustee in Bankruptcy of John Viviane & Son, Inc., the bankrupt herein, and the attorney for such trustee. They seek an order awarding them "appropriate costs" pursuant to § 2, sub. a(18) of the Bankruptcy Act and granting them judgment therefor against the respondents jointly and severally. These "appropriate costs" are their fees and disbursements as trustee and attorney for the trustee, which they also seek to have fixed and allowed. The respondents are respectively the bankrupt corporation, the bankrupt's principal stockholder, his wife, who is the transferee of certain real property which formerly belonged to the bankrupt and constituted its sole asset, and the attorney for the bankrupt.

These proceedings have followed a quite unusual course and this is what has led to this unusual application.

The bankruptcy proceeding was initially commenced on March 20, 1936, when the bankrupt, a corporation owned almost entirely by respondent John Viviani, filed a voluntary petition in bankruptcy. On the same day it was adjudicated a bankrupt and the case was referred to Honorable Robert P. Stephenson, Referee in Bankruptcy.

Neither the bankrupt nor any of the creditors came forward with the indemnity necessary for the expenses of the proceeding. No further steps were taken in the proceeding, and on December 3, 1936, the Referee filed a certificate closing the case, as required by § 2, sub. a(8) of the Bankruptcy Act, 11 U.S.C.A. § 11, sub. a(8).

Nothing further happened in the proceeding until February 8, 1955, when the bankrupt petitioned the District Court for an order reopening it.

This step was taken against the following background. In 1952 the bankrupt corporation had conveyed a parcel of real property which it had included in its schedule of assets in the 1936 proceeding to Barbara Viviani, the wife of the major owner of its stock and the deed was recorded. About a year thereafter the City of New York condemned these premises for housing purposes and a condemnation award was made to Barbara Viviani for more than $51,000. Before the entire award had been paid to her, however, the city expressed doubts as to the validity of the title to be conveyed because of the 1936 bankruptcy petition.

The bankrupt's petition for reopening alleged that it was brought for the purpose of putting to rest any doubts which the city might have as to this title. The petition also included allegations that the bankrupt was now solvent, that there were no creditors in existence, and that the parcel of real property which had been condemned was the bankrupt's only asset. It did not disclose that this property had in fact been conveyed to Barbara Viviani three years before or that the condemnation award was to be paid to her. The petition requested that the original bankruptcy proceeding be reopened to determine whether or not the bankrupt should be discharged or the petition dismissed in order that any cloud on the bankrupt's title to this real property could be removed.

On the basis of these allegations the District Court, without notice or hearing, signed an *ex parte* order reopening the bankruptcy proceedings which had been closed in 1936 and re-referring the matter to Referee Stephenson. The Referee

called a first meeting of creditors for March 29, 1955, at which no creditors appeared. On April 5, 1955, the Referee on his own motion appointed Saper, one of the instant petitioners, as Trustee in Bankruptcy. Thereafter Saper appointed petitioner Ross as attorney for the trustee pursuant to an order.

After some investigation, Saper, as such trustee, then brought on a petition in the District Court against Barbara Viviani, the Messrs. Goldstein, her attorneys in the condemnation proceeding who claimed a lien on the award, and the City of New York, seeking to set aside the transfer of the condemned property by the bankrupt to Barbara Viviani and the fee agreement between Barbara Viviani and the Goldsteins covering their fees for services in the condemnation proceeding, directing the Comptroller of the City of New York to pay all funds payable in condemnation to the Trustee rather than to Barbara Viviani, enjoining the Goldsteins from continuing any proceedings to collect their fees, and directing that the claims of all parties be determined by the Bankruptcy Court in summary proceedings. This petition was denied by the District Court on the merits, D.C. S.D.N.Y., 132 F.Supp. 633, upon the theory that the real property had long since been abandoned by the creditors who had all been paid, that title to it had revested in the bankrupt and that there was no bar to the bankrupt's transfer of the property to Barbara Viviani. A motion for reargument by the trustee, upon allegations that certain pre-petition creditors had in fact not been paid prior to the transfer of the property to Barbara Viviani, was denied.

On appeal by the trustee from this decision, the Court of Appeals, without going into the merits of the trustee's claims, held sua sponte that no appropriate basis had been shown for reopening the 1936 proceedings and that the order of the District Court granting such reopening had been erroneous. It therefore reversed the order appealed from and remanded the proceeding to the District Court "with directions for dismissal

of the motion for its reopening and of steps subsequent thereto." Saper v. Viviani, 2 Cir., 226 F.2d 608, 612.

Thereafter a petition by the trustee for rehearing before the Court of Appeals was denied, and a motion by respondents to recall the mandate, to delete the costs which had been fixed therein in favor of the trustee, and to tax costs in respondents' favor, was granted to the extent of providing that no costs were allowed upon the appeal to any of the parties.

When the orders of the respective parties on the mandate as so amended were submitted to the District Court the Trustee submitted a proposed order providing that the proceeding be referred to the Referee to determine whether costs in the nature of compensation to the trustee and his attorney should be taxed as a result of the bankrupt's motion to reopen the bankruptcy proceedings which the Court of Appeals had ordered dismissed, what amounts should be so taxed, and which parties should be required to pay them. The District Judge refused to sign the trustee's proposed order containing these provisions but also struck from the respondents' proposed order, before signing it, a provision denying compensation to the trustee and his attorney.

Petitioners, trustee and his attorney, on this application submit affidavits setting forth the services they claim to have performed on behalf of the bankrupt estate and the disbursements they claim were necessarily incurred. These services were performed largely in connection with the proceedings to have the condemnation award turned over to the estate and investigations looking toward that end, though they also included the examination of John Viviani at an adjourned first meeting of creditors, and other matters relating to the estate generally.

The petitioners point out that during the pendency of the reopened proceeding two creditors of the bankrupt, listed in the schedules filed with the original voluntary petition, filed claims with the Referee. One of these creditors had a judgment against the bankrupt in the

Supreme Court, New York County, and, on motion to extend it up to date, was granted a judgment in excess of $23,-000. After this creditor commenced an action to set aside the transfer of the real estate by the bankrupt to Barbara Viviani as a fraudulent conveyance, the bankrupt and the Vivianis settled this claim by paying the claimant more than $24,000.

The petitioners contend that they were duly appointed as trustee and attorney for the trustee respectively, that they performed substantial services in these capacities which helped at least one of the creditors to obtain payment of his claim, that they had nothing to do with the reopening of the 1936 proceedings, which was accomplished entirely at the instance of the bankrupt and for the benefit of the respondents, and that the respondents who were instrumental in obtaining the order reopening the 1936 proceedings, had concealed from the Court the transfer of the property to Barbara Viviani, and had misrepresented the financial condition of the bankrupt.

The respondents contend that the order of the Court of Appeals dismissing the reopened proceedings precludes any award of allowances to the petitioners.

The fees and disbursements which the petitioners seek to have fixed and charged as costs against the respondents, are not sought to be charged as costs in the turnover proceeding, but in the reopened bankruptcy proceeding itself. The question of costs on the appeal in the turnover proceeding was determined by the Court of Appeals adversely to petitioners in amending its mandate. In considering this application I will assume that the question of whether or not petitioners may be entitled to judgment for the allowances in the reopened bankruptcy proceeding which they now seek was left open by the Court of Appeals and by the District Court in passing on the proposed orders submitted on the amended mandate and I will consider the merits of the application.

Petitioners assert that the fees and disbursements to which they claim to be entitled may be taxed against the respondents and judgments entered therefor under Subdivision a(18) of § 2 of the Bankruptcy Act, 11 U.S.C.A. § 11, sub. a(18), which authorizes the Bankruptcy Court to

"Tax costs and render judgments therefor against the unsuccessful party, against the successful party for cause, in part against each of the parties, and against estates, in proceedings under this Act."

They contend that the Bankruptcy Court has broad equity powers which may be exercised under this section to enforce the payment of the trustee's and his attorney's compensation by any person who should be equitably required to bear them. However, I find no authority given to the Bankruptcy Court under this section, or otherwise, to tax the fees and expenses of the trustee and his attorney against these respondents.

■ The fees and disbursements of the trustee and his attorney are part of the expenses of administration payable out of the bankrupt estate as a debt which has class one priority, Bankruptcy Act, § 64, sub. a(1), 11 U.S.C.A. § 104, sub. a(1). They are not costs taxable under § 2, sub. a(18) of the Act, which refers only "to the costs fixed in the Act itself and to the usual cost allowances fixed in other applicable statutes and by the rules of the appellate courts." Berry v. Root, 5 Cir., 148 F.2d 945, 947, certiorari denied 326 U.S. 755, 66 S.Ct. 91, 90 L.Ed. 453.

The Court of Appeals of this Circuit said in Guerin v. Weil, Gotshal & Manges, 2 Cir., 205 F.2d 302, 304:

"* * * Although it has been broadly stated that a bankruptcy court is a court of equity, Young v. Higbee Co., 324 U.S. 204, 214, 65 S. Ct. 594, 89 L.Ed. 890, the exercise of its equitable powers must be strictly confined within the prescribed limits of the Bankruptcy Act, see Berry v. Root, 5 Cir., 148 F.2d 945, 946, certiorari denied 326 U.S. 755, 66 S. Ct. 91, 90 L.Ed. 453. * * * *"

■ The Bankruptcy Act provides that compensation and expenses of the trustee and his attorney should be paid as a priority claim out of the bankrupt estate, § 64, sub. a(1). It does not provide that the Bankruptcy Court is empowered to render judgment for such compensation against the bankrupt or any persons whom it felt equitably should bear such expense. Nor is there anything in the scheme of the Bankruptcy Act which indicates that the Congress so intended. The Bankruptcy Act confers no power on the Bankruptcy Court to order the bankrupt to pay such items other than as a condition to an order vacating adjudication and dismissing the petition. Gelson v. Rudin, 2 Cir., 200 F.2d 31; see, also, Gelson v. Nemser, 2 Cir., 222 F.2d 617.

The situation here is quite different from that presented in such cases as Smith v. Central Trust Co., 4 Cir., 139 F.2d 733, where the compensation of a trustee and his attorney were directed to be paid out of the estate upon the dismissal of the proceeding on direction of the Court of Appeals because the debtor in a Chapter 10 proceeding belonged to a class excepted from the operation of the Bankruptcy Act. There were ample assets in the estate from which to pay such charges, and it was held that the Bankruptcy Court had the power to order payment out of the funds in its hands before turning them back to a State Court receiver. But there never were any assets in the hands of the Court or the trustee in the instant case.

■ Nor is the rule as to costs in contested involuntary proceedings laid down in In re Lacov, 2 Cir., 142 F. 960, In re Aschenbach, 2 Cir., 183 F. 305, and In re St. Lawrence Condensed Milk Corp., 2 Cir., 9 F.2d 896, in any way applicable to the case at bar. These cases hold that the Bankruptcy Court may charge the compensation of a receiver and his attorney against a petitioning creditor who instituted an unsuccessful contested involuntary proceeding. This rule is limited to cases contested prior to adjudication. Cf. In re National Carbon Co., 6 Cir., 241 F. 330. As indicated in the Aschenbach case, the rule was announced in order to avoid requiring a debtor, who has suffered injury by reason of the filing of an unfounded petition, to bring an independent action against the petitioning creditor to recover the loss to such debtor consequent upon the payment of receiver's expenses out of the debtor's assets which should not have been placed in the receiver's hands.[1] It derives from § 2, sub. a(18) as amplified by General Order 34.[2]

Possibly fees of the trustee's attorney may also be charged against an unsuccessful party in a situation such as that presented in In re Swofford, D.C.D.Minn., 112 F.Supp. 893, where the Bankruptcy Court taxed fees of the attorney for the trustee against the losing party in a restoration proceeding brought to recover property taken illegally from the estate, despite the limitations placed on Section 2, sub. a(18) of the Act by Berry v. Root, supra. Elements of the situation in Swofford are similar to some of those in the Lacov and Aschenbach cases and the holding seems to be based, in part on avoidance of loss or damage to the estate and in part on the further fact that the party against whom these fees were charged as costs had flouted the Bankruptcy Court in seizing the property from

---

1. Such recovery is in addition to and apart from recovery on the bond to be filed on an application for the appointment of a receiver, § 69, sub. a, 11 U.S.C.A. § 109, sub. a; for "costs, counsel fees, expenses and damages" occasioned by the seizure of bankrupt's property, § 69, sub. b.

2. General Order 34, 11 U.S.C.A. following section 53, provides that in contested proceedings the successful petitioning creditor shall recover and be paid out of the estate "the same costs that are allowed to a party recovering in a civil action cognizable as a case in equity." It further provides that "if the petition is dismissed, the debtor shall recover like costs against the petitioner."

the bankrupt and its conduct had been close to contemptuous.

But the fact that the Bankruptcy Court has been held to have the power to tax costs against unsuccessful adverse parties in these limited circumstances does not mean that it has the authority to do so here or that its discretion should be exercised to do so if it had such authority.

█ It may be that the Bankruptcy Court may fix and allow such fees and disbursements as petitioner trustee and his attorney might be entitled to for services necessarily performed on behalf of the estate and to charge them against any assets in the bankrupt estate even though the reopened proceedings have been dismissed. Such fixation and allowance would be merely an academic exercise since there were never any assets in the bankrupt estate in the hands of the Court out of which such allowances could be or could have been paid. However, the Bankruptcy Court has no authority to render judgment for such allowances against the bankrupt corporation, even if it had any assets to pay them, which it has not. Even less is the Bankruptcy Court authorized to render judgment for such allowances against the other respondents, John Viviani, Barbara Viviani, and the attorney for the bankrupt and these respondents, none of whom are even parties to the reopened proceeding except in so far as Barbara Viviani was a respondent in the unsuccessful turnover proceeding brought by the trustee which resulted in the dismissal of the reopened bankruptcy proceeding and all steps taken therein by the Court of Appeals.

This result may be unfortunate for the petitioners. But it must be remembered that "the only realistic course in bankruptcy collections is that allowances must be limited—as they are by customary practice—to a reasonable percentage of the recovery." Rosenberg and Jacobs v. United States (Matter of Bri-Test, Inc.,) 2 Cir., 242 F.2d 141, 142. Here no assets at all were found or collected by petitioners or came into the trustee's possession.

This is a hazard which a trustee and his attorney necessarily run and which they should take into account in accepting their appointments.

The petition is in all respects denied.